UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JEROME NORTON,

        Plaintiff,

  -against-                                   **DECISION AND ORDER**
                                                         13-CV-3520 (ADS)(GRB)

TOWN OF BROOKHAVEN, COUNTY OF
SUFFOLK, ROBERT QUINLAN, DAVID J.
MORAN, JENNIFER LUTZER, JUSTIN
FOLBER, *formerly known as Jason Folber*,
WILLIAM POWELL, and VALERIE
BISCARDI, all individually and in their
official capacity,

        Defendants.
---------------------------------------------------------------X

APPEARANCES:

**Leeds Brown Law, P.C.**
*Attorneys for the Plaintiff*
One Old Country Road, Ste. 347
Carle Place, New York 11514
        By:    Rick Ostrove, Esq.
                Bryan L. Arbeit, Esq., Of Counsel

**Devitt Spellman Barrett LLP**
*Attorneys for Defendants Town of Brookhaven, Robert Quinlan, David J. Moran,*
*Jennifer Lutzer, Justin Folber, William Powell, and Valerie Biscardi*
50 Route 111
Smithtown, New York 11787
        By:    Jeltje deJong, Esq.
                Joshua S. Shteierman, Esq., Of Counsel

**The Suffolk County Attorney's Office**
*Attorneys for the Defendant County of Suffolk*
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788
        By:    Brian C. Mitchell, Assistant County Attorney, Of Counsel

**SPATT, District Judge.**

Familiarity with the factual and procedural background of this case is presumed.

However, by way of background, on January 14, 2014, the Plaintiff Jerome Norton (the "Plaintiff") filed a Second Amended Complaint against the Defendants the Town of Brookhaven (the "Town"), plus Robert Quinlan, David J. Moran, Jennifer Lutzer, Justin Folber, formerly known as Jason Folber, William Powell, Valerie Biscardi (the "Individual Defendants," and collectively the "Brookhaven Defendants") and the County of Suffolk (the "County") pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, the United States Constitution, the New York State Constitution, New York State statutory law, and the common law.

The Plaintiff brought the following fourteen causes of action: (1) a First Amendment intimate association claim under § 1983; (2) a retaliation claim for a First Amendment speech/right to petition claim under § 1983; (3) a malicious prosecution claim under New York State Law; (4) a *respondeat superior* liability claim for the malicious prosecution claim under New York State Law; (5) a substantive due process claim under § 1983; (6) an equal protection claim under § 1983; (7) a procedural due process claim under § 1983; (8) a Fourth Amendment claim under § 1983; (9) a claim under the New York Civil Rights Law § 8; (10) a claim against the Town under Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 694–95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) for violating the Plaintiff's Fourth Amendment rights under § 1983; (11) a Monell liability claim for violating the Plaintiff's First Amendment rights, and also based on substantive due process, equal protection, and procedural due process; (12) a claim for declaratory judgment and injunctive relief against the Town; (13) a claim for

declaratory judgment and injunctive relief against the County; and (14) a claim for attorney's fees under 42 U.S.C. § 1988. The only claim against the County was the claim for declaratory and injunctive relief.

On February 21, 2014, the Brookhaven Defendants moved, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. On March 24, 2014, the County separately moved, pursuant to Fed. R. Civ. P. 12(b)(6), for similar relief.

In opposition to the motions to dismiss, the Plaintiff withdrew his claim based on substantive due process.

On July 30, 2014, in a Memorandum of Decision and Order (the "July 30, 2014 Order"), the Court granted in part and denied in part the motion to dismiss by the Brookhaven Defendants and granted the motion to dismiss by the County. Norton v. Town of Brookhaven, 13-CV-3520 (ADS)(GRB), 2014 WL 3746484 (E.D.N.Y. July 30, 2014). Relevant portions of the July 30, 2014 Order are described in more detail throughout this opinion.

In sum, as to the motion to dismiss by the Brookhaven Defendants, the Court denied the motion with respect to (1) the Section 1983 First Amendment intimate association, Fourth Amendment, and procedural due process claims; (2) the corresponding Monell claims against the Town; (3) the claim under Section 8 of the New York Civil Rights Law; and (4) the request for declaratory relief as against the Town. The Court otherwise granted the motion to dismiss by the Brookhaven Defendants.

On August 13, 2014, the Plaintiff moved, pursuant to Local Civil Rule 6.3 and

3

Fed. R. Civ. P. 54(b), for an order granting reconsideration of the July 30, 2014 order, and upon reconsideration, reversing the dismissal of (1) the Plaintiff's First Amendment retaliation claim; (2) the New York State malicious prosecution claims against the Town and Individual Defendants; and (3) the declaratory judgment claim against the County.

For the following reasons, the Court grants the motion for reconsideration.

## I. DISCUSSION

A. The Legal Standard for a Motion for Reconsideration

Fed. R. Civ. P. 54(b) provides that a court is permitted "at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all the parties," to revise "any order or other form of decision." Fed. R. Civ. P. 54(b). Local Civil Rule 6.3 sets forth this District's procedural rules with respect to reconsideration motions.

A motion for reconsideration is the proper vehicle for bringing to the Court's attention matters it may have overlooked in its initial ruling or order. See Local Civ. Rule 6.3. The grounds for reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). "The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)(citations omitted). "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second

bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir.), as amended (July 13, 2012)(quotation marks omitted).

Furthermore, arguments raised for the first time on reconsideration are not proper grounds for reconsideration. See Image Processing Techs., LLC v. Canon Inc., No. 10 Civ. 3867(SJF)(ETB), 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012)("[A] party is not permitted to 'advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration.")(citing Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp., 948 F.2d 111, 115 (2d Cir. 1991)). "[A] party requesting [reconsideration] is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use Rule [6.3] to advance new facts and theories in response to the court's rulings." Church of Scientology Int'l v. Time Warner, Inc., No. 92 Civ. 3024 (PKL), 1997 WL 538912, at *2 (S.D.N.Y. Aug. 27, 1997). "'The purpose of the rule is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" Woodard v. Hardenfelder, 845 F. Supp. 960, 966 (E.D.N.Y. 1994)(quoting McMahan & Co. v. Donaldson, Lufkin & Jenrette, 727 F. Supp. 833, 833 (S.D.N.Y. 1989)).

B.  The First Amendment Retaliation Claims:  Speech and Petition

In the July 30, 2014 Order, the Court dismissed the Plaintiff's First Amendment retaliation claim, reasoning in part that the Plaintiff failed to allege that his exercise of his First Amendment rights was "chilled" or discouraged by the Brookhaven Defendants.  In so ruling, the Court relied on Second Circuit case law, including Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010); Ford v. Reynolds, 167 Fed. Appx. 248, 250 (2d Cir. 2006);

and <u>Morrison v. Johnson</u>, 429 F.3d 48, 51 (2d Cir. 2005), each of which stands for the proposition that an allegation of a "chill" is indispensable for a First Amendment retaliation claim by private plaintiffs.

However, a further review of the case law indicates that, while it was once well-settled law that a private citizen who alleged retaliation for criticism of public officials had to "prove that . . . [the] defendants' actions effectively chilled the exercise of [his or her] First Amendment right," <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 381 (2d Cir. 2004)(citing <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001)), the Second Circuit has recently "clarified, . . . that '[c]hilled speech is not the *sine qua non* of a First Amendment claim.'" <u>Prince v. Cnty. of Nassau</u>, 2014 WL 1465379, at *3 (2d Cir. April 16, 2014)(quoting <u>Dorsett v. Cnty. of Nassau</u>, 732 F.3d 157, 160 (2d Cir. 2013)). Thus, "[a] plaintiff has standing if he can show either that his speech has been adversely affected by the government retaliation <u>or</u> that he has suffered some other concrete harm." <u>Dorsett</u>, 732 F.3d at 160 (emphasis added); <u>see also</u> <u>Glacken v. Inc. Vill. of Freeport</u>, 09 CV 4832 (DRH)(AKT), 2014 WL 1836143, at *7 (E.D.N.Y. May 8, 2014)(citing <u>Prince</u> and <u>Dorsett</u>).

Further, the Court finds that, contrary to the contention of the Brookhaven Defendants, a criminal prosecution is a sufficient form of concrete harm for purposes of a First Amendment retaliation claim. <u>Brink v. Muscente</u>, No. 11 Civ. 4306 (ER), 2013 U.S. Dist. LEXIS 137880, at *23-24, 2013 WL 5366371 (S.D.N.Y. Sept. 25, 2013)(accepting that the plaintiff suffered "harm in the form of retaliatory charges brought against her" because it is "well-settled that the First Amendment 'prohibits government officials from subjecting an individual to retaliatory actions, <u>including criminal prosecutions</u>, for

6

speaking out.'")(quoting Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006))(emphasis added). "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" Hartman, 547 U.S. at 256 (quoting Crawford-El v. Britton, 523 U.S. 574, 588 n. 10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)). Accordingly, the Court finds that Plaintiff has adequately alleged a harm that obviates the need to plead subjective chilling effects. Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009)("Chilling is required to be alleged only in cases where a plaintiff states no harm independent of the chilling of speech."); see also Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994)(no subjective chilling required where the plaintiff alleged that the municipal defendants misapplied the zoning code in retaliation for the plaintiff's exercise of free speech rights).

In addition to a chilling effect or concrete harm, a First Amendment retaliation claim requires that the plaintiff show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

In the July 30, 2014 Order, the Court found that the Plaintiff plead protected speech and complaints; that the Brookhaven Defendants did not dispute that they took adverse actions against the Plaintiff; and that the Plaintiff plead a causal connection between the protected speech and adverse actions based on temporal proximity.

With regard to the element of causation, the Court disavows its prior statement that the Brookhaven Defendants began prosecuting the Plaintiff's alleged Town Code violations prior to his first alleged protected activity on July 26, 2011. Rather, a closer review of the underlying sequence of allegations reveals that while the Plaintiff's property may been subject to <u>investigations</u> in the form of an inspection of the premises and the issuance of letter orders prior to his first protected activity, he was not subjected to <u>prosecution</u> until after July 26, 2011. The fact that the Individual Defendants issued letter orders, allegedly of an investigative nature, prior to the Plaintiff's first protected activity on July 26, 2011 does not defeat his First Amendment retaliation claim. This is because it could be inferred that the Plaintiff's claim is that his protected activities partially motivated the Defendants' decision to criminally prosecute him, allegedly without probable cause.

To the extent the Brookhaven Defendants contend that they would have pursued the criminal prosecution against the Plaintiff regardless of his protected speech, the Court cannot make this determination based on the four corners of the Second Amended Complaint.

In sum, upon reconsideration, the Court finds that the Plaintiff sets forth sufficient allegations for a First Amendment retaliation claim to withstand Rule 12(b)(6) scrutiny. Accordingly, the Court grants that part of the Plaintiff's motion for reconsideration seeking to reinstate the Plaintiff's First Amendment retaliation claim.

C. <u>The Malicious Prosecution Claims</u>

To prevail in an action for malicious prosecution under New York law, the Plaintiff must show: "1) the initiation of an action by the defendant against [him or her],

2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff." Engel v. CBS, Inc., 145 F.3d 499, 502 (2d Cir. 1998)(quoting O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996)), certified question accepted, 92 N.Y.2d 867, 677 N.Y.S.2d 771, 700 N.E.2d 310 (1998) and certified question answered, 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999).

Here, as noted in the July 30, 2014 Order, the Brookhaven Defendants argue that the Plaintiff cannot meet the fourth element — favorable termination. The Court dismissed the Plaintiff's malicious prosecution cause of action because "the underlying criminal charges upon which the Plaintiff bases his malicious prosecution claims were dismissed pursuant to statutes that did not reach the merits." 2014 WL 3746484, at *19.

However, the dismissal of the Plaintiff's malicious prosecution claims on this purported basis contradicted the Court's previous citation to Cantalino v. Danner, 96 N.Y.2d 391, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001), which held that the question of favorable termination is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused. Id. at 396. Thus, the fact that the underlying prosecutions against the Plaintiff did not reach the merits does not, without more, render the termination of the prosecution inconsistent with innocence.

The Court also relied on MacFawn v. Kresler, 88 N.Y.2d 859, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996) to hold that the dismissal without prejudice of an information for insufficiency under New York State Criminal Procedure Law ("CPL") 170.35 could not serve as the basis for a malicious prosecution claim because "dismissals of these types may not end the state's pursuit of the accused on the same charges . . . ." 2014 WL

9

3746484, at *18 (quoting Colon v. City of New York, 09 CV 0008 (JBW), 2012 WL 691544, at *7 (E.D.N.Y. Feb. 9, 2012), report and recommendation adopted, 09–CV–8, 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012)). The MacFawn court reasoned that, because the action could be refiled, it was not terminated, either favorably or unfavorably. Id. It reached this conclusion even though, as here, the prosecution had not opted to refile the charging instrument. MacFawn, 88 N.Y.2d at 860; see also O'Brien v. Alexander, 101 F.3d 1479, 1487 (2d Cir. 1996)("One might have expected the [MacFawn] court to equate such a lack of action with an abandonment on the part of the State").

In an effort to distinguish MacFawn or limit its precedential value here, the Plaintiff points to two cases decided after MacFawn, namely Smith–Hunter v. Harvey, 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000), and Stampf v. Long Island R.R., 2014 U.S. App. LEXIS 14533, at * 17, 2014 WL 3732920 (2d Cir. N.Y. July 30, 2014), the latter of which was coincidentally issued the same day as this Court's July 30, 2014 Order.

In Smith-Hunter, the New York Court of Appeals held that dismissal on speedy trial grounds is a favorable termination. The Court of Appeals noted that "dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents 'the formal abandonment of the proceedings by the public prosecutor.'" 95 N.Y.2d at 195 (citing Restatement (Second) of Torts § 659(c)). However, contrary to the Plaintiff's implied argument, "[t]he court in Smith–Hunter[] did not overrule its finding i[n] MacFawn, but merely distinguished it." McGee v. Dunn, 940 F. Supp. 2d 93, 103 (S.D.N.Y. 2013). "In fact, the New York Court of Appeals in Smith–Hunter explicitly affirmed MacFawn's holding that a termination for facial insufficiency does not

10

constitute a favorable termination." Neal v. Fitzpatrick, 250 F. Supp. 2d 153, 155 (E.D.N.Y. 2003); see also DeCicco v. Madison Cty., 300 A.D.2d 706, 750 N.Y.S.2d 371, 373 (3d Dep't. 2002)(post Smith-Hunter decision following MacFawn in finding that a dismissal for facial insufficiency did not constitute a favorable termination).

However, in Smith-Hunter, the Court of Appeals clarified the holding of MacFawn, stating that it "simply held that a plaintiff in a malicious prosecution action must show, as a threshold matter, that the criminal proceeding was *finally* terminated," and that a dismissal, even one without prejudice, "qualifies as a final, favorable termination" if it constitutes "the formal abandonment of the proceedings by the public prosecutor." 95 N.Y.2d at 197-98 (citations and quotation marks omitted).

In Stampf, the Second Circuit held that a declination of prosecution could suffice "to establish termination in the plaintiff's favor notwithstanding that the prosecutor is theoretically capable of resurrecting the prosecution." 2014 U.S. App. LEXIS 14533, at * 17. The Second Circuit reasoned that, if the law were otherwise:

> [I]t would mean that malicious prosecution claims often could not be brought in the cases where the accusations had the least substance. The cases that most lack substance are most likely to be abandoned by the prosecution without pursuing them to judgment. [T]he most unjustified accusations might thus be the most likely to be shielded from malicious prosecution claims.

Stampf, 2014 U.S. App. LEXIS 14533, at * 17. However, as the Plaintiff in Stampf was never the subject of a criminal complaint, the prosecutors' declination did not rest on a particular provision of the CPL, and, therefore, its precedential value here is unclear.

That said, another recent Second Circuit case, McGee v. Doe, 12-1206-CV, 2014 WL 2459704, at *5(2d Cir. June 3, 2014), as amended (July 2, 2014), is on point. There, the Second Circuit indicated that whether a termination of a criminal proceeding for

11

facial insufficiency under CPL § 170.30(1)(a) and 170.35 "qualifies as a final, favorable termination" requires a consideration of the "particular circumstances presented" in each case. McGee, 2014 WL 2459704, at *5 ("here there was no indication that the dismissal of the action against McGee, and the failure by the prosecution to re-file the claim, constituted a formal abandonment of the charges").

Applying Smith-Hunter and McGee, the Court finds that the Plaintiff has adequately alleged that the dismissal of the six of the Uniform Code Accusatory Instruments pursuant to CPL § 170.35 "constituted a formal abandonment of the charges." In this regard, the Plaintiff alleges that those instruments were dismissed "because [the housing inspector Justin] Folber did not re-inspect the Norfleet Property and confirm noncompliance after his alleged mailing of the letter orders." (Second Amended Compl., at ¶ 217). Thus, the Plaintiff sets forth sufficient factual allegations that the dismissal of the accusatory instruments under CPL § 170.35 qualified as a final, favorable termination for purposes of a malicious prosecution cause of action.

To be sure, the fact that these six accusatory instruments were dismissed and not amended does not, by itself, suggest that there existed no facts under which the Brookhaven Defendants could amend. However, based on the totality of the Second Amended Complaint, the Court finds that the dismissal of the six accusatory instruments under CPL § 170.35 – apparently as a result of Folber's failure to re-inspect the premises – suffices to satisfy the element of a final, favorable termination for a malicious prosecution claim. For this reason, at this time, the Court need not address the allegation that the dismissal under CPL § 170.35 was itself procedurally improper.

In sum, the Court grants that part of the motion for reconsideration to reinstate the Plaintiff's New York State malicious prosecution claim based on the six accusatory instruments dismissed pursuant to CPL § 170.35.

The Court reaches a similar conclusion with respect to the eight accusatory instruments dismissed pursuant to CPL § 170.40. In holding that a dismissal under CPL § 170.40 cannot serve as a basis for a malicious prosecution claim under New York law, the Court relied on DiCecilia v. Early, 234 A.D.2d 335 (2d Dep't 1996) and Lynch v. Suffolk Cnty. Police Dep't, Inc., 348 F. App'x 672, 674 (2d Cir. 2009). However, the Court overlooked Cantalino v. Danner, 96 N.Y.2d 391, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001), which rejected any such *per se* rule.

In Cantalino, the plaintiff brought a malicious prosecution claim after the criminal court dismissed the case against the plaintiff "in the interest of justice." 96 N.Y.2d at 393. The defendant argued that the claim was barred because the plaintiff had not received a favorable termination, and the Appellate Division agreed. Id. at 394. However, the New York Court of Appeals reinstated the claim. Writing for a unanimous Court, Chief Judge Judith S. Kaye held that "the dismissal of criminal charges against plaintiff was a favorable termination because it was not inconsistent with her innocence." Id. at 395. As noted above, Chief Judge Kaye explained that, while, "there are circumstances where a dismissal in the interest of justice is inconsistent with innocence because it represents mercy requested or accepted by the accused," the Court's past decisions did "not establish a *per se* rule that a dismissal in the interest of justice can never constitute a favorable termination. Rather . . . the question is whether, under the circumstances of

13

each case, the disposition was inconsistent with the innocence of the accused." Id. at 396–97 (internal quotation marks and citations omitted).

While Lynch was decided after Cantalino, Lynch cites as precedent for its holding Hygh v. Jacobs, 961 F.2d 359, 368 (2d Cir. 1992), which predates Cantalino. In Hygh, the Second Circuit held that, "as a matter of [New York] law, [a dismissal 'in the interest of justice'] cannot provide the favorable termination required as the basis for a claim of malicious prosecution." 961 F.2d 359, 368 (2d Cir. 1992)(citations omitted). In so finding, the Hygh Court relied primarily on an older New York Court of Appeals' holding that "[a] dismissal 'in the interest of justice' is neither an acquittal of the charges nor any determination of the merits. Rather, it leaves the question of guilt or innocence unanswered." Id. (quoting Ryan v. New York Tel. Co., 62 N.Y.2d 494, 504–05, 467 N.E.2d 487 (1984)).

"Because Lynch relies on Hygh, it appears that the Second Circuit overlooked the Court of Appeals' clarification of the law in Cantalino. Indeed, even after the Second Circuit decided Lynch, other judges [in this Circuit] have seen fit to apply the rule of Cantalino." Guzman v. United States, 11 CIV. 5834 (JPO), 2013 WL 543343, at *8 (S.D.N.Y. Feb. 14, 2013), on reconsideration, 11 CIV. 5834 (JPO), 2013 WL 5018553 (S.D.N.Y. Sept. 13, 2013); see e.g., D'Olimipio v. Crisafi, 718 F. Supp. 2d 357, 368 (S.D.N.Y. 2010)(post-Lynch decision holding that Hygh was overruled by Cantalino); Blanzina v. Port Auth. Of New York & New Jersey, 06 Civ. 481 (KNF), 2008 WL 919671, at *5 (S.D.N.Y. Apr. 1, 2008)(citing Cantalino for the proposition that "[w]hether a dismissal in the interest of justice . . . constitutes a favorable termination is a question which requires a case-by-case analysis"); Javanovic v. City of New York, 04

14

Civ. 8437 (PAC), 2010 WL 8500283, at *6 (S.D.N.Y. Sept. 28, 2010)(relying on Cantolino for the proposition that "a dismissal by the prosecution 'in the interest of justice . . . may properly be considered a 'favorable' termination'"); but see Tribie v. Parwanta, No. 10 Civ. 6016 (VB), 2012 WL 246619, at *8 (S.D.N.Y. Jan. 26, 2012)(rejecting the plaintiff's argument that a dismissal "in the interest of justice" does not *per se* preclude a malicious prosecution case because "Lynch was decided eight years after Cantalino"); Paulin v. Figlia, 11 Civ. 9634 (VB), 2013 WL 120167, at *5 (S.D.N.Y. Jan. 10, 2013) ("Because plaintiff's criminal case was . . . dismissed ['in the interest of justice'], his malicious prosecution claim must be dismissed.")

The case of Arum v Miller, 273 F. Supp. 2d 229 (E.D.N.Y 2003)(Spatt, J.), is instructive. In that case, this Court found an interest of justice dismissal in state court to be a favorable termination for purposes of a malicious prosecution claim, stating as follows:

> In the first instance, the State Court did not present any reasons for dismissing charges in the interest of justice. As such, the Court is left with no clear basis for the dismissal of charges against the plaintiff. Second, the [town attorney] did not state that the dismissal was out of mercy. Nor did the [town attorney] imply that the dismissal was out of mercy. Indeed, none of the reasons expressed by the [town attorney] are inconsistent with the plaintiff's innocence. And, neither the State Court nor the [town attorney] referred to the plaintiff's guilt or innocence. Thus, the reasons for dismissing the charges against the plaintiff were not inconsistent with her innocence.

Id. at 234-35.

Similarly, here, the State Court did not proffer reasons for dismissing the charges. Nor did the Prosecutor imply that the dismissal was out of mercy. Rather, the application to dismiss with respect to the CPL 170.40 dismissal of the

15

accusatory instruments was allegedly based on the failure to serve a criminal summons.

Thus, this Court cannot conclude at this stage of the proceedings that the reasons for dismissing the charges against the Plaintiff were inconsistent with his innocence. Therefore, the Court grants that part of the Plaintiff's motion for reconsideration reinstating his New York State malicious prosecution claims based on the accusatory instruments dismissed pursuant to CPL § 170.40. Again, the Court is not prepared to make findings of law as to the allegation that the dismissal under CPL § 170.40 itself was procedurally improper.

Having reinstated the malicious prosecution claims against the Individual Defendants, the Court hereby reinstates the corresponding claims against the Town based on a theory of *respondeat superior*. Indeed, unlike claims brought pursuant to Section 1983, under New York State law, municipalities may be held vicariously liable for malicious prosecution under a theory of *respondeat superior*. Williams v. City of White Plains, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010).

D. The Declaratory Judgment Claim Against the County

In the July 30, 2014 Order, this Court dismissed the Plaintiff's claim seeking declaratory relief against the County.

As noted in that order, "[d]istrict attorneys are generally considered to be local officers of their respective counties." Conte v. Cnty. of Nassau, 06–CV–4746 (JFB)(ETB), 2010 WL 3924677, at *27 (E.D.N.Y. Sept. 30, 2010). Thus, "where a

district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker." Pinaud v. County of Suffolk, 52 F.3d 1139, 1153–54 n. 14 (2d Cir. 1995)(internal quotation marks and alterations omitted).  However, a county cannot be liable for the acts of a district attorney related to the decision to prosecute or not prosecute an individual. See id. at 1153–54 (finding no municipal liability for actions of an Assistant District Attorney unless related to management of office or history of negligence).  "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State, not the county." Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988).  Thus, "the County cannot be said to be responsible for the conduct at issue." Id.

However, when "a plaintiff's claims center[ ] not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, there can be liability against a New York county for an alleged malicious prosecution." Pinaud, 52 F.3d at 1153–54 n. 14 (internal quotation marks and citation omitted).  Thus, "an allegation of deficiencies in the 'management of the [district attorney's] office' would appear to be necessary . . . in order for any claim of malicious prosecution against the County . . . to stand." Id. at 1153 (citation omitted).

Here, in the July 30, 2014 Order, the Court dismissed the Plaintiff's claim seeking declaratory relief, reasoning:

> In the Court's view, the Plaintiff's allegation that the District Attorney delegates the prosecution of petty Town offenses to the Town Attorney, without sufficient oversight, is simply another way of claiming that the District Attorney has failed to adequately supervise or train those attorneys in their basic trial advocacy duties.  As the practice the Plaintiff challenges is directly related to the District Attorney's discretion to prosecute, the County cannot be held to dictate such policies.

17

2014 WL 3746484, at *25.

However, in so ruling, this Court did not consider a substantially similar scenario addressed by United States District Judge Nicholas G. Garaufis in <u>Norton v. Town of Islip</u>, 04–CV–3079, 2009 WL 804702, at * 10 (E.D.N.Y. March 27, 2009), <u>rev'd in part on other grounds by</u> 378 F. App'x 85 (2d Cir. 2010), a case initiated by the Plaintiff's brother, Howard. In that case, the County moved for summary judgment, relying on <u>Baez</u> for the proposition that the Suffolk County District Attorney's Office represented the State and not the County when it prosecuted a criminal action. <u>Id.</u> at *26.

Judge Garaufis noted that "the Plaintiff's case present[ed] a close question." <u>Id.</u> at *27. Yet, in denying the County's motion, Judge Garaufis explained:

> The County overlook[ed] the accompanying rule that a DA acts as a County official in his administration and management of the district attorney's office." Decisions regarding supervision and training relate to the DA's role as "the manager of the district attorney's office," and in that role, "the district attorney acts as a county policymaker" whose actions may give rise to municipal liability. Under this framework, the Second Circuit has limited the DA's role as a New York State official to "specific decision[s] of the District Attorney to prosecute.

<u>Id.</u> at *26 (citations omitted). Judge Garaufis further found that the Plaintiff's claims "that the County maintained a policy or custom of 'delegating to town attorney's offices the prosecution of petty offenses' and then systematically 'abdicating all responsibility' for the supervision and oversight of Town zoning prosecutions d[id] not directly attack the specific decisions of the DA to prosecute." <u>Id.</u> at *27.

In this case, upon reconsideration, the Court notes that the Plaintiff similarly does not challenge his specific prosecution or, for that matter, that of any individual. Instead, the Plaintiff challenges the District Attorney's general policies and management of his office. "On balance, the court cannot rule, at this time, that these allegations purely

18

implicate the role of the Suffolk DA's Office in its capacity representing the State. The alleged policy or custom at issue addresses the interlocking relationship between two tiers of government — the Town and the County — over local prosecutions, and the County's alleged failure to execute its supervisory duties in that relationship." Id. Accordingly, the Court grants that part of the Plaintiff's motion for reconsideration to reinstate the declaratory judgment claim against the County.

## II. CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's motion pursuant to Local Civil Rule 6.3 and/or Fed. R. Civ. P. 54(b) for reconsideration reinstating the Plaintiff's First Amendment retaliation claim, the New York State malicious prosecution claims against the Town of Brookhaven and the Individual Defendants, and the declaratory judgment claim against the County.

**SO ORDERED.**

Dated: Central Islip, New York
September 18, 2014

　　　　　　　　　　　　　　　　　　　　　　　　　　*Arthur D. Spatt*
　　　　　　　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge